Filed 2/27/13  In re T.S. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re T.S., JR., a Person Coming Under the Juvenile Court Law. | B241961 (Los Angeles County Super. Ct. No. CK91143) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. T.S., SR., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Steven R. Klaif, Temporary Judge.  Reversed with directions.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Denise M. Hippach, Deputy County Counsel, for Plaintiff and Respondent.

_____

T.S., Sr., (Father) appeals from orders of the juvenile court finding jurisdiction over his son, T.S., Jr. (T.S.), under Welfare and Institutions Code section 300, subdivision (b)[1] based on Father's conviction of assault with a deadly weapon (not involving T.S.) and denying Father family reunification services under section 361.5, subdivision (e)(1).  We reverse both orders and remand the case with directions to hold a hearing to determine whether Father should be awarded custody under section 361.2.

### FACTS AND PROCEEDINGS BELOW

Two-year old T.S. came to the attention of the Department of Children and Family Services (DCFS), following a report from the group home where he and his mother (Mother) were living, that Mother had screamed and cursed at T.S., choked him and "pushed his head with lots of force"  The home also reported that Mother "hits [T.S.] a lot."  Based on this report the DCFS filed a petition alleging that T.S. was a child described by section 300, subdivisions (a) and (b) due to "excessive" physical abuse that "caused the child unreasonable pain and suffering."  Father's whereabouts were unknown at the time and he was not mentioned in the petition.  The juvenile court found a prima facie case of dependency and ordered T.S. detained from Mother's custody.

By the time of the jurisdictional hearing in January 2012, the DCFS had located Father in a California prison.  The agency submitted a report to the court giving Father's and witnesses' versions of the facts underlying Father's assault convictions.  In an interview with a DCFS worker, Father stated that he got into a shoving match in a bar with a man who was drunk and they were both ejected.  The drunk and his friends followed Father to the bar's parking lot "and it turned into a big brawl."  In trying to get away, Father hit the drunk with his car and then backed up and hit the drunk's car and another car.  According to a security guard in the parking lot, Father intentionally used his car to hit the drunk and two other cars.  He then backed up and struck the security

---

[1]     All statutory references are to the Welfare and Institutions Code.

2

guard, knocking him down and dislocating his left knee. Father pleaded guilty to two counts of assault with a deadly weapon. The court sentenced him to the midterm of three years. His release date is February 25, 2013.

Based on the police reports, DCFS filed an amended petition under section 300, subdivision (b) alleging that Father's commission of assault with a deadly weapon "endangers the child's physical safety and emotional well being, placing the child at risk of physical and emotional harm and damage."

In February 2012, the court dismissed the allegation of physical abuse against Mother under section 300, subdivision (a), sustained the same allegation under subdivision (b) and continued the case for adjudication of the subdivision (b) allegation as to Father.[2] The court found that Father was T.S.'s presumed father.

The court held a hearing on the subdivision (b) allegation against Father in May 2012. Sustained as modified, that allegation stated that Father had been convicted of assault with a deadly weapon for which he began a three-year prison sentence on July 5, 2011 and that Father's "criminal history and conduct endangers the child's physical safety and emotional well being, placing the child at risk of physical and emotional harm and damage."[3] Explaining its ruling from the bench, the court stated "the conviction alone is not a basis for jurisdiction, but . . . [i]t's the underlying conduct that is the basis for jurisdiction." The court exercised its discretion under section 361.5, subdivision (e)(1). and denied Father reunification services on the grounds that he did not have a significant bond with T.S., his prison sentence was beyond the reunification period for a two-year old child, and he committed a violent crime but did not seek out anger management counseling nor accept responsibility for his actions.

Father filed a timely notice of appeal.

---

[2] Mother is not a party to this appeal.

[3] Section 300, subdivision (b) does not provide for jurisdiction based on "emotional harm" and "damage," (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717-718), but that is not the ground for our reversal of the jurisdiction order.

## DISCUSSION

### I. SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE SECTION 300, SUBDIVISION (b) ALLEGATION AS TO FATHER.

#### A. The Issue Of Jurisdiction Is Not Moot As To Father.

The DCFS contends that we need not consider Father's challenge to the jurisdictional findings as they relate to him because, even if his challenge is successful, T.S. would remain a dependent child of the court based on the unchallenged finding that Mother physically abused him. Erroneous jurisdictional findings as to Father, however, could affect him adversely in the future if dependency proceedings were again initiated or even contemplated with regard to T.S. or with regard to Father's future children, if any. (*In re Drake M*. (2012) 211 Cal.App.4th 754, 762-763.) "Moreover, refusal to address such jurisdictional errors on appeal . . . has the undesirable result of insulating erroneous or arbitrary rulings from review." (*In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548.) For these reasons we will address Father's appeal from the jurisdictional finding as to him.

#### B. The Record Contains No Evidence That Father Failed Or Was Unable To Protect T.S. From Physical Harm Inflicted By Mother.

We review jurisdictional orders for substantial evidence. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1649.) Under that standard, we view the record as a whole in the light most favorable to the juvenile court's orders and we indulge every inference and resolve all conflicts in favor of the court's decision. ( *Ibid.*) Here, substantial evidence does not support the section 300, subdivision (b) allegation against Father.

The court and the DCFS mistakenly attempt to base jurisdiction under section 300, subdivision (b), on evidence of Father's violent conduct in the restaurant parking lot. They theorize that because Father lost his temper and assaulted adult strangers in the parking lot there is a risk that he will lose his temper and assault his minor son, T.S. Subdivision (b), however, does not cover the risk of a parent's *own* infliction of physical

4

harm on his child; it covers a parent's failure or inability to protect his child from physical harm inflicted *by another*. Subdivision (b) states in relevant part that the juvenile court has jurisdiction over a child when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, *as a result of the failure or inability of his or her parent or guardian to adequately . . . protect the child*[.]" (Italics added.)

In this case there is no doubt that T.S. suffered serious physical harm at the hands of his mother but there is no evidence that this harm was the result of any failure or inability on Father's part to protect him. In fact, the allegations against Father do not allege that Father failed to supervise or protect T.S., and the juvenile court made no such finding. Furthermore, Father was in jail when Mother physically abused T.S. and thus had no opportunity to protect T.S. from Mother's beatings or to prevent them. We disagree with the DCFS view that Father's incarceration was sufficient in itself to sustain the finding that Father failed to protect T.S. That view is tantamount to proclaiming: "Go to jail, lose your kid." That is not the law in California. (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1117.) The record contains no alternative factual basis for a finding of failure to protect under section 300, subdivision (b). Unlike *In re James C.* (2002) 104 Cal.App.4th 470, 483, on which the DCFS relies, the record in this case contains no evidence that Father abandoned T.S. or failed to arrange for his care. When Father was sent to jail, T.S. was in Mother's custody and she was responsible for his care and supervision.

## II. INSTEAD OF ADDRESSING REUNIFICATION SERVICES THE COURT SHOULD HAVE FIRST DETERMINED WHETHER FATHER DESIRED TO ASSUME CUSTODY OF T.S. AND WHETHER THAT CUSTODY WOULD BE DETRIMENTAL TO THE CHILD.

After sustaining the petition as to Father under section 300, subdivision (b), the court proceeded to determine whether Father should be granted family reunification

services. Applying section 361.5[4], the court found that "reunification with the father would be detrimental to the child" and, therefore, "[t]he court is ordering no reunification services."

We agree with Father that because the court proceeded under the wrong statute—section 361.5 instead of 361.2—its order denying reunification services must be reversed and the cause remanded for the court to make a custody determination under section 361.2, subdivision (a).

As explained in *R.S. v. Superior Court* (2007) 154 Cal.App.4th 1262, 1270, section 361.5 pertains only to custodial parents. "'The section comes into play "whenever a minor is removed from a parent's or guardian's custody . . . ." (§ 361.5, subd. (a).) There can be no removal of custody from a parent who does not have custody in the first place . . . .'" (*R.S.*, at p. 1270.) Thus, section 361.5 by its terms does not apply to a noncustodial parent such as Father who was incarcerated at the time the petition was filed. Instead, the court should have considered the case under section 361.2, subdivision (a). (*R.S.*, at p. 1265.)

---

[4]     Section 361.5, subdivision (b), provides, in pertinent part: "Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following:  . . . (12) That the parent or guardian of the child has been convicted of a violent felony, as defined in subdivision (c) of Section 667.5 of the Penal Code." It is undisputed that Father was convicted of a "violent felony." Where subdivision (b)(12) applies, the court "shall not order reunification . . . unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c).) Under section 361.5, subdivision (e)(1): "If the parent or guardian is incarcerated [or] institutionalized . . . the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child." In determining detriment, "the court shall consider the age of the child, the degree of parent-child bonding, the length of the sentence, the length and nature of the treatment, the nature of the crime or illness, the degree of detriment to the child if services are not offered and, for children 10 years of age or older, the child's attitude toward the implementation of family reunification services, the likelihood of the parent's discharge from incarceration, institutionalization, or detention within the reunification time limitations described in subdivision (a), and any other appropriate factors." (*Ibid.*)

6

Section 361.2, subdivision (a) states in relevant part: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." This provision applies to parents who are incarcerated. (*In re V.F.* (2007) 157 Cal.App.4th 962, 971.) "[A] parent may have custody of a child, in a legal sense, even while delegating the day-to-day care of that child to a third party for a limited period of time." (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 700.)[5]

*In re V.F.*, *supra,* is directly on point. In *V.F.,* an incarcerated father challenged the juvenile court's order removing his child from the child's mother's custody without first making findings as to him under section 361.2. (*In re V.F.*, *supra,* 157 Cal.App.4th at p. 969.) At the jurisdictional hearing, the court sustained section 300, subdivision (b) allegations against the mother. At the disposition hearing, just as in the case before us, the court removed the children from the mother's custody, granted family reunification services to the mother, but denied reunification services to the father under section 361.5, subdivisions (b)(12) and (e)(1). (*V.F.*, at p. 967) The appellate court held that when the juvenile court removes a child from a custodial parent, it must proceed under section 361.2, subdivision (a) to determine "whether there is a parent . . . with whom the child was not residing . . . who desires to assume custody of the child." (*V.F.*, at p. 971.) The court rejected the respondent's argument that proceeding under the wrong statute was harmless error because the court considered and found detriment under section 361.5. The court explained that, "[w]hen the proceedings take place under an

<hr>

[5] Cf. section 300, subdivision (g), which defines a dependent child, in part, as one whose "parent has been incarcerated or institutionalized and cannot arrange for the care of the child."

inappropriate statute, even one requiring similar findings, the parties are not afforded the opportunity to tailor their case to the correct statute, and the trial court cannot fulfill its responsibility to make findings of fact within the provisions of that statute." (*V.F.*, at p. 973.) The court reversed the dispositional orders as to the father and ordered the juvenile court to consider and make findings under section 361.2. (*V.F.*, at p. 974.)

Because we find the cases discussed above to be controlling, and respondent does not argue otherwise, we will reverse the order denying Father reunification services and remand the cause to the juvenile court for a hearing under section 361.2.

## DISPOSITION

The jurisdictional finding against T.S., Sr., and the order denying him reunification services are reversed. The cause is remanded to the juvenile court with directions to conduct a hearing to determine if T.S., Sr., is seeking custody of T.S., Jr., and, if so, to make appropriate findings under section 361.2 of the Welfare and Institutions Code.

NOT TO BE PUBLISHED.


ROTHSCHILD, J.

We concur:


MALLANO, P. J.


CHANEY, J.


8