Filed 10/4/16

<u>CERTIFIED FOR PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re JULIEN H., a Person Coming Under the Juvenile Court Law. | B267953 |
| | (Los Angeles County Super. Ct. No. DK11981) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JACOB M., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Annabelle Cortez, Judge. Affirmed and remanded with directions.

Matthew J. Hardy, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

Jacob M., father (Father) of Julien H. appeals from a dispositional order relating to Father made pursuant to Welfare and Institutions Code section 361, subdivision (c)(1).[1] Father contends that section 361, subdivision (c)(1) applies only to a parent with whom a child resides, and because Julien did not reside with Father, the court had no authority under that section to make the orders restricting his rights to Julien.  Father also contends that the error was prejudicial because no other authority supports the court's order. We agree with Father that section 361, subdivision (c) does not apply but we conclude that Father has failed to demonstrate prejudice.  Consequently, we affirm but remand with directions.

### FACTUAL AND PROCEDURAL BACKGROUND

Julien (born in 2010) lived with his mother, Janelle H.,[2] and had weekend visits with Father.  The parents were never married, and the family never lived together.

In February 2015, DCFS received an anonymous referral indicating that the mother regularly left Julien for several days a week with his grandmother who smoked cigarettes in the child's presence, left prescription medicine accessible to him and allowed him to eat candy.  The report also indicated that Julien's mother did not provide him with proper dental or medical care.

When the social worker responded to the mother's home, she denied the allegations, and she reported problems with Father's violent and angry behavior, including that he abused drugs and alcohol and suffered from mental health problems. The mother also told the social worker that Father had a pending child abuse referral involving Julien's half-sibling (M.) based on Father's arrest for felony driving under the influence while M. was a passenger in his car and that Father caused an automobile accident in which M. was injured.  The mother also indicated that police had responded to her home several times because of Father's actions, including once when Father

---

[1]  All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]  Janelle H. is not a party to this appeal.

2

blocked the grandmother's car and another time when he tried to take Julien without a car seat.

The social worker unsuccessfully attempted to contact Father. In late March 2015, Father called the social worker, stating that he had not returned her phone calls because he had been incarcerated. Father said he was bipolar and had been taking medication for the condition, but was considering discontinuing the medication after consulting with his doctor. Father conceded that he used marijuana, and agreed to drug test.[3] Father indicated that he wanted to remain involved in Julien's life and to continue visits with his son; he did not, however, seek custody of the child.

DCFS discovered that the parents had a family law order that did not contain any express legal or physical custody determination, but nonetheless awarded Father unmonitored visitation with Julien every Saturday from 2:00 p.m. to 7:00 p.m. The mother also reported that she had agreed to allow Father to have unmonitored visits with Julien for the entire weekend every other week.

The social worker expressed concerns about Father's ongoing unmonitored visits with Julien and requested that the mother obtain an order in the family law court for sole custody of the child and a modification of the visitation order to require monitored visits for Father. Although the mother agreed to seek a modification of the family law order, she failed to do so.

On June 22, 2015, DCFS obtained an order to remove Julien from Father pending the detention hearing. Thereafter, DCFS filed a section 300 petition under subdivisions (b) and (j) alleging Julien was at risk based on Father's conduct. Among other allegations, the petition alleged in b-2 that Father abused marijuana, alcohol, and prescription medication and that he had mental and emotional problems that rendered him

---

[3] On March 30, 2015, Father tested positive for marijuana.

incapable of providing regular care for the child. It also alleged that the mother knew or should have known of Father's substance abuse but failed to protect the child.[4]

At the detention hearing, DCFS asked the court to order monitored visitation for Father and to order that Father participate in random drug and alcohol testing. Father agreed to the drug testing and stated that he is "submitting to detention today." The court found a prima facie case for detention based on substantial danger to the physical or emotional health of the child and no reasonable means to protect him without removal from Father. The court vested temporary custody of Julien with DCFS and ordered the child released to his mother.

In its jurisdiction/disposition report, DCFS reported Father's monitored visits were inconsistent, and the report described the parents as "aggressive" towards each other. Father was participating in a substance abuse program; however, he was not required to test as part of the program unless he appeared to be under the influence. Father was also participating in an individual drug counseling program and domestic violence counseling and had enrolled in alcohol and drug testing, but he had missed all seven drug/alcohol tests.

On September 30, 2015, the juvenile court conducted the combined jurisdiction/disposition hearing. Although the parents requested that the court terminate jurisdiction, the court found by a preponderance of the evidence, that allegations j-1, b-2 and b-3 were true,[5] and proceeded to the disposition. The court declared Julien a dependent of the court, released the child to his mother and ordered family maintenance services for her. The court ordered enhancement services, monitored visits, and

---

[4] In allegation b-1 and j-1, the petition alleged Father drove under the influence and collided with a parked vehicle, causing M. to sustain injuries that required emergency medical treatment. The petition further alleged in b-3 that Father had mental and emotional problems and failed to take his prescribed medication and that as a result he was unable to provide care to the minor.

[5] The court dismissed allegation b-1.

4

substance abuse treatment for Father. The court continued the case for a section 364 hearing.[6]

Father appealed.

## DISCUSSION

On appeal, Father does not challenge the order declaring Julien a dependent of the juvenile court. Rather, Father's only contention is that the order limiting his access to Julien must be reversed because the court had no authority to "impose restrictions on his parental rights."[7] We disagree.

Preliminarily, we address DCFS's argument that Father forfeited any argument that the juvenile court erred when it removed Julien from him because he did not raise the issue in the dependency court. Although in general, a party who does not raise an argument below forfeits the argument on appeal, where as here, an appellant poses a question of law, the appellate court can exercise its discretion to address the issue. (See *In re V.F.* (2007) 157 Cal.App.4th 962, 967-968 [holding that father did not forfeit his arguments that he was entitled to retain custody of his children under section 361, subdivision (c)], superseded on other grounds, as stated in *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 57-58.) Because the arguments Father raises are primarily issues of law, we decline to hold that he forfeited his arguments regarding the disposition order.

Section 361, subdivision (c) authorizes a child's removal "from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated." (§ 361, subd. (c).) At the disposition hearing, the court declared Julien a dependent of the court and ordered him removed from Father

---

**6** The dependency court conducted additional review hearings in January, April and July 2016 but did not change the orders relating to Julien and set the matter for another hearing for September 30, 2016.

**7** To the extent Father challenges the court's pre-detention removal and detention orders that challenge is moot because those orders were superseded by the disposition orders and there is no effectual relief that may be provided by this court. (See *In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1420 [a detention order is by its nature temporary; it lasts only until the court decides placement at the disposition hearing].)

pursuant to section 361, subdivision (c). Although Julien and Father have had unmonitored weekend visits, Julien did not reside with Father. Consequently, the court could not remove Julien from Father's physical custody under section 361, subdivision (c)(1) because Julien was not residing with him when the petition was initiated. (*In re Dakota J.* (2015) 242 Cal.App.4th 619, 628 (*Dakota J.*) [holding that "the statute does not contemplate that a child could be removed from a parent who is not living with the child at the relevant time"]; *In re V.F.*, *supra*, 157 Cal.App.4th at p. 969 [section 361, subdivision (c) " ' "does not, by its terms, encompass the situation of the noncustodial parent" ' "].) Thus, as a matter of law, section 361, subdivision (c) did not apply.

Notwithstanding this conclusion, reversal is unwarranted unless the error resulted in prejudice, i.e., it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. (See, e.g., *Dakota J.*, *supra*, 242 Cal.App.4th at pp. 630-632.)[8]

Father contends that he suffered prejudice because the order denied his fundamental right to parent his child and the order would disadvantage him in future matters. The underlying premise of this argument is that he suffered prejudice because no other authority grants the court the power to limit his access to his child in a manner analogous to a removal order under section 361, subdivision (c). Father is mistaken.

---

[8] To the extent Father suggests that *Dakota J.* holds that an error in removing a child from a noncustodial parent based on section 361, subdivision (c) is prejudicial per se, Father misreads *Dakota J.* The appellate court in *Dakota J.* did not conclude that the error was per se prejudicial. Instead the court found prejudice based on the parent's showing of actual prejudice in that case—the removal order jeopardized arrangements the mother had made for the children to live with a relative who had provided a stable home for five years. (*Dakota J.*, *supra*, 242 Cal.App.4th at pp. 630-632.)

As the court in *Dakota J.* implicitly acknowledged,[9] the dependency court has the power under section 361, subdivision (a) and section 362, subdivision (a) to limit the access of a parent with whom the child does not reside and thus effectively remove the child from the noncustodial parent. (See *Dakota J.*, *supra*, 242 Cal.App.4th at pp. 632-633.) Specifically, section 361, subdivision (a)(1), grants the court authority to "limit the control to be exercised over the dependent child by any parent or guardian." (§ 361, subd. (a)(1).) And unlike subdivision (c) of section 361, subdivision (a)(1) applies to "any parent," not solely to parents with whom the child resides. Similarly, section 362, subdivision (a) further authorizes the court to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child." (§ 362, subd. (a).) (See *Dakota J.*, *supra*, 242 Cal.App.4th at pp. 632-633.)

Father does not argue that in order to justify exercise of its power under section 361, subdivision (a) and section 362, subdivision (a), the dependency court must make a different factual finding or apply a higher standard of proof than would be required under section 361, subdivision (c). Nor does he argue that the factual findings made by the dependency court are not supported by substantial evidence. Accordingly, Father has failed to show that the court's reliance on section 361, subdivision (c) was prejudicial. Therefore, we order the juvenile court to amend the order to reflect that it is made pursuant to section 361, subdivision (a) and section 362, subdivision (a).

---

[9] This matter has also generated commentary from legal analysts. (See Menetrez, *Protect Kids From Abusive Noncustodial Parents*, L.A. Daily Journal (Sept. 1, 2016) p. 7 [recognizing the dearth of legal guidance on this issue, and urging the Legislature to amend the Welfare and Institutions Code to expressly provide for removal from noncustodial parents and to identify the findings required to support the order].)

## DISPOSITION

The order is affirmed, and the matter is remanded for the juvenile court to amend its order to reflect that it is made pursuant to section 361, subdivision (a) and section 362, subdivision (a).

<u>CERTIFIED FOR PUBLICATION</u>.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


LUI, J.